UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                                             Case No. 11-32283
                                                                    Chapter 13
LISA BOSWELL,

    Debtor.

_____

LISA BOSWELL,

    Plaintiff,

v.                                                                         Adv. Proc. 12-03084

TITLEMAX OF ALABAMA, INC.,
d/b/a TITLEBUCKS,

    Defendant.

### Order Granting Motion for Judgment on the Pleadings

### Introduction

      Presently before the court is TitleMax of Alabama's ("TitleMax") Motion for Judgment on the Pleadings. Therein, TitleMax contends that, pursuant to Fed. R. Civ. P. 12(c), the case should be decided in its favor even if all the facts asserted in the plaintiff's complaint are true. In her complaint, the plaintiff's seeks recoupment for, among other things, an alleged violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq*. For the reasons set forth below, TitleMax's Motion for Judgment on the Pleadings will be granted.

## Jurisdiction

The court's jurisdiction in this contested matter is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, this action is one of recoupment against a claim upon the estate and therefore is in the nature of an objection to claim. As such, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B), thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Plaintiff's Factual Allegations

The plaintiff's claims in this lawsuit are predicated on TitleMax's alleged violations of TILA and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226, promulgated pursuant thereto, stemming from a pawn transaction. Specifically, the plaintiff alleges that TitleMax of Alabama violated TILA's annual percentage rate (APR) disclosure requirements in that the APR was understated by more than .125%.

Plaintiff contends that she entered into a 30-day "vehicle title pledge agreement / pawn ticket" with TitleMax on August 26, 2011. Compl., ¶ 11. The agreement states that payment in full was due on Sunday, September 25, 2011. Compl., ¶ 12. The transaction later became the subject of Claim 6 in the plaintiff's bankruptcy case no. 11-32283. Compl., ¶ 13. This agreement is subject to the Truth in Lending Act. ¶ 14. TitleMax made disclosures in accordance with its obligations under the Truth in Lending Act. ¶ 15. Those disclosures were inaccurate in that TitleMax's disclosures allege an APR of 206.71% when in fact the APR is actually 213.8387%. ¶ 16. The variance in the APR disclosure is 7.1287%. ¶ 17. The Truth in Lending Act provides that the APR disclosure may not deviate more than .125% in a consumer transaction. ¶ 18.

The plaintiff seeks actual and statutory damages, only in the nature of recoupment against the defendant's claim against the estate.

## Standard of Review

When ruling on a Rule 12(c) motion for judgment on the pleadings, a court must examine the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true, and construe all allegations in favor of the plaintiff. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998); *Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 (11th Cir.1997); *Harris v. Menendez,* 817 F.2d 737, 739 (11th Cir.1987). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). *See also In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996).

## Contentions of the Parties

TitleMax's contends that it is entitled to judgment as a matter of law on a number of grounds, chief of which is that its APR disclosure complied with TILA and Regulation Z.[1]

Plaintiff received a 30 day pawn ticket and TitleMax based its APR disclosure on a 30-day period. TitleMax's APR disclosure was off by 7.1287% because the date of maturity fell on a day the TitleMax was not open for business. Under Regulation Z, "The creditor may disregard the effects that dates of scheduled payments and advances may be changed because the scheduled date is not a business day." 12 C.F.R § 226.17(c)(3)(ii). A business day is defined as "a day on which the creditor's offices are open to the public for carrying on substantially all of its business functions." 12 C.F.R. § 226. The pawn transaction was consummated on August 26, 2011. The APR disclosure was based on a 30 day period and came due on September 25, 2011, a Sunday. TitleMax is never opened for business on Sundays. Pursuant to Regulation Z, the APR was thus properly disclosed.

---

[1] In addition to its contention that the APR disclosure was proper, TitleMax further contends that the claim is barred both by the statute of limitations and the doctrine of *res judicata*. Because the court finds that the APR disclosure was proper, it need not address TitleMax's other grounds for dismissal.

Plaintiff, on the other hand, urges that defendant's reliance on the exception in 12 C.F.R. 226.17(c)(3)(ii) is improper for two reasons. First, Plaintiff contends that Regulations Z's non-business day exemption never applies to pawn transactions. In the plaintiff's view, pawn transactions, including the rules for APR disclosures, are governed exclusively by the official Staff Commentary to Regulation Z. The relevant section reads:

> iii. The term of the transaction, for calculating the annual percentage rate, is the period of time agreed to by the pawnbroker creditor and the consumer. The term of the transaction does not include a grace period (including any statutory grace period) after the agreed redemption date.

Paragraph 18 of the Official Staff Commentary to 12 C.F.R. § 226.17(c))

Second, the plaintiff argues that the 12 C.F.R. 226.17(c)(3)(ii) never applies to single payment loans. Because the exception upon which the defendant relies contemplates only "payments" and does not discuss the situation of a single payment loan, it does not apply to the pawn transaction at issue here.

## Conclusions of Law

Both of plaintiff's arguments ultimately turn on whether 12 C.F.R. § 226.17(c)(iii)'s non-business day exception applies to pawn transactions. 12 C.F.R. § 226.17 *et. seq.* provides rules and regulations for all closed-end credit transactions. A closed-end transaction "means consumer credit other than 'open-end credit' as defined in this section." 12 C.F.R. § 226.2(10). Open-end credit means:

> "consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

12 C.F.R. § 226.2(20). Not only do pawn transactions fail to meet the

open-end credit criteria, they are explicitly mentioned in the comments to 12 C.F.R. § 226.17. Paragraph 18 of the Official Staff Commentary to 12 C.F.R. § 226.17(c) confirms that pawn transactions are considered closed-end transactions and they fall within the purview of 12 C.F.R. § 226.17.

However, nowhere in Paragraph 18 of the Official Staff Commentary to 12 C.F.R. § 226.17(c) does it state that the exception for computation of time under 12 C.F.R. § 226.17(c)(3)(ii) does not apply. If the court were to exclude pawn transactions from 12 C.F.R. § 226.17(c)(3)(ii) as the plaintiff urges, it would mean that the Commentary trumps the very rule itself. Plaintiff offers no case law to support such an assertion and the court is likewise unable to find any authority for the plaintiff's position. As such, the plaintiff's first argument fails.

Plaintiff's second argument also lacks merit. It is an elementary rule of statutory construction that the singular includes the plural and vice versa. The very first sentence of the first section of the United States Code, in what is commonly known as the Dictionary Act, makes this principle abundantly clear. "In determining the meaning of any Act of Congress, unless the context indicates otherwise--words importing the singular include and apply to several persons, parties, or things [and] words importing the plural include the singular." 1 U.S.C.A. § 1; *see Dobard v. Johnson,* 749 F.2d 1503, 1509 (11th Cir. 1985) ("In determining the meaning of any Act or resolution of Congress, words importing the singular number may extend and be applied to several persons or things ...." (quoting 1 U.S.C. § 1 (1982))); *see also U.S. v. Mikelberg,* 517 F.2d 246 (5th Cir.1975) (applying statute to Truth in Lending Act).

Nothing in 12 C.F.R. § 226.17(c)(3)(ii) or its surrounding subsections indicate that a single payment should be treated any differently than a series of payments. Instead, Paragraph 18 of the Official Staff Commentary to 12 C.F.R. § 226.17(c) makes clear that the statute encompasses single pay pawn transactions. As such, a "creditor may disregard the effects that dates of scheduled payments and advances may be changed because the scheduled date is not a business day." 12 C.F.R. § 226.17(c)(3)(ii). There is no violation in TILA so there can be no claim upon which the plaintiff can seek relief.

## Conclusion

For the foregoing reasons the defendant's motion for Judgment on the Pleadings will be granted and this adversary proceeding will be dismissed. A judgment in conformity with this memorandum opinion will enter separately.

Done this the 12th day of December, 2012.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Nick Wooten, Plaintiff's Attorney
   Jeffrey L. Ingram, Defendant's Attorney